Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:	516.741.4977
Facsimile:	516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAN CLANCY,<br><br>                    Plaintiff,<br><br>            vs.<br><br>EVERI HOLDINGS INC., MICHAEL D. RUMBOLZ, RANDY L. TAYLOR, GEOFFREY P. JUDGE, LINSTER W. FOX, MAUREEN T. MULLARKEY, ATUL BALI, SECIL TABLI WATSON, PAUL W. FINCH, JR., and DEBRA L. NUTTON,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Dan Clancy ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against Everi Holdings Inc. ("Everi" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

- 1 -

to sell the Company to Apollo Global Management, Inc. ("Apollo") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a July 26, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the deal, Everi stockholders will receive $14.50 per share in cash upon completion of the Proposed Transaction.

3. On September 17, 2024, the Company filed its Preliminary Proxy Statement on Schedule PREM14A (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Everi, provided by the Company Management to the Board and the Company's financial advisor, Houlihan Lokey Capital, Inc. ("Houlihan Lokey"); and (c) the data and inputs

underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Houlihan Lokey, and provided to the Board.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

7. Plaintiff is a citizen of Michigan and, at all times relevant hereto, has been a Everi stockholder.

8. Defendant Everi develops and supplies entertaining game content, gaming machines, and gaming systems and services for land-based and iGaming operators in the United States, Canada, and internationally. Everi is incorporated in Delaware and has its principal place of business at 7250 South Tenaya Way, Suite 100, Las Vegas, NV 89113. Shares of Everi common stock are traded on the New York Stock Exchange ("NYSE") under the symbol under the symbol "EVRI."

9. Defendant Michael D. Rumbolz ("Rumbolz") has been Chairman of the Company Board at all relevant times.

10. Defendant Randy L. Taylor ("Taylor") has been a director of the Company at all relevant times. Additionally, Defendant Taylor serves as the Company's President and Chief Executive Officer ("CEO").

11. Defendant Geoffrey P. Judge ("Judge") has been a director of the Company at all relevant times.

12. Defendant Linster W. Fox ("Fox") has been a director of the Company at all relevant times.

13. Defendant Maureen T. Mullarkey ("Mullarkey") has been a director of the Company at all relevant times.

14. Defendant Atul Bali ("Bali") has been a director of the Company at all relevant times.

15. Defendant Secil Tabli Watson ("Watson") has been a director of the Company at all relevant times.

16. Defendant Paul W. Finch, Jr. ("Finch") has been a director of the Company at all relevant times.

17. Defendant Debra L. Nutton ("Nutton") has been a director of the Company at all relevant times.

18. Defendants identified in ¶¶ 9-17 are collectively referred to as the "Individual Defendants."

19. Non-Party Apollo is a high-growth, global alternative asset manager.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as

to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23. Defendant Everi develops and supplies entertaining game content, gaming machines, and gaming systems and services for land-based and iGaming operators in the United States, Canada, and internationally.

*The Flawed Sales Process*

24. As set forth in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate the sale of the Company to Apollo.

25. The Proxy Statement fails to address why Company Board deemed Party 1's proposed cash bid of $15.00 to $16.25 per share to be an inferior offer to the $14.25 per share price that was ultimately accepted by the Board.

26. In addition, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Apollo, and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Proxy Statement, if so in all specific manners.

27. The Proxy Statement fails to disclose the totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

28. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

29. On July 26, 2024, Everi issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **LONDON AND LAS VEGAS (July 26, 2024)** – International Game Technology PLC (NYSE: IGT) ("IGT") and Everi Holdings Inc. (NYSE: EVRI) ("Everi") today announced that they have entered into definitive agreements whereby IGT's Gaming & Digital business ("IGT Gaming") and Everi will be simultaneously acquired by a newly formed holding company owned by funds managed by affiliates of Apollo Global Management, Inc. (NYSE: APO) ("Apollo") (the "Apollo Funds") in an all-cash transaction that values the acquired businesses at approximately $6.3 billion on a combined basis.
>
> On February 29, 2024, IGT and Everi announced that they had entered into definitive agreements pursuant to which IGT would separate the IGT Gaming business by way of a taxable spin-off to IGT shareholders and then immediately combine such business with Everi. Under the terms of the new agreements, the Apollo Funds will acquire IGT Gaming and Everi. Following closing, IGT Gaming and Everi will be privately owned companies that are part of one combined enterprise.
>
> Under the terms of the new agreements, Everi stockholders will receive $14.25 per share in cash, representing a 56% premium over Everi's closing share price on July 25, 2024. IGT will receive $4.05 billion of gross cash proceeds for IGT Gaming. IGT expects significant portions of the cash proceeds to be used to repay debt and to be returned to shareholders.
>
> De Agostini S.p.A., a società per azioni organized under the laws of Italy, the majority shareholder of IGT, has committed to make a minority equity investment in the combined enterprise at the closing of the transaction.
>
> Upon completion of the sale of IGT Gaming to the Apollo Funds, IGT will change its name and stock ticker symbol, becoming a premier pure play lottery business. The transaction with the Apollo Funds has been unanimously approved by a special committee of the IGT Board of Directors and unanimously approved by all

members of the Everi Board of Directors, and the previous transaction agreements between IGT and Everi entered into on February 28, 2024 have been terminated.

Vince Sadusky, IGT PLC CEO, said, "Our new agreement represents a positive evolution of our previously announced transaction with Everi and a successful culmination of the strategic review process that IGT launched last year. With the Apollo Funds, we have found a partner that recognizes the strength of IGT Gaming, the value of our talent and our position in the industry. This transaction will allow IGT Gaming to continue to invest in and enhance its growing core segments while providing customers with a more comprehensive portfolio of offerings. After the closing of this transaction, IGT's shareholders will continue to own one hundred percent of IGT's Global Lottery business, which will be positioned for long-term success as a pure-play global lottery player with a more focused, compelling business model and optimized capital structure to drive long-term shareholder value."

Randy Taylor, Everi President and CEO, added, "We believe this transaction maintains the integrity and strong strategic rationale of our original agreement with IGT, but now also provides significant and certain value to our stockholders as we move forward with the Apollo Funds as our partner. By joining forces with IGT Gaming, we expect to continue to lead, innovate, and provide unparalleled value to our customers as a stronger player in the global gaming, FinTech, and digital industry. Apollo is a respected investment firm with a strong track record in the gaming sector, and they recognize the value of our business and see significant potential in bringing IGT Gaming and Everi together. Under private ownership, we believe we will be better positioned to accelerate the integration of our two organizations for the benefit of our customers and employees."

Daniel Cohen, Partner at Apollo, stated, "We are excited to reach this agreement with IGT and Everi, which establishes a leading, diversified solutions provider that is well positioned across the entire gaming ecosystem. As an active investor in the gaming and leisure sector for many years, we have long admired both companies and their highly talented teams. We strongly believe in the value proposition of the combination and are confident these complementary gaming platforms will be even better positioned under private ownership to capture the opportunities ahead to grow and create value. We look forward to working in partnership with all the people at IGT Gaming and Everi to propel the combined enterprise forward."

Apollo has a strong track record of successful current and former investments across leisure, including in the gaming and entertainment sectors.

**Leadership, Governance & Structure**

IGT PLC CEO Vince Sadusky will oversee the separation of IGT Gaming and support the transition through transaction completion. Post-closing, Mr. Sadusky will continue in his role, leading the lottery-focused company under its new name

and stock ticker symbol. Following the acquisitions of IGT Gaming and Everi by the Apollo Funds, current IGT EVP Strategy and Corporate Development, Fabio Celadon, will serve as CFO, and current Everi CFO, Mark Labay, will assume the role of Chief Integration Officer, of the combined enterprise. The newly formed combined enterprise will be headquartered in Las Vegas.

In addition, upon closing of the transaction, the shares of common stock, par value $0.001 per share, of Everi will be delisted from the New York Stock Exchange.

**Approvals and Timing**

The acquisitions of IGT Gaming and Everi by the Apollo Funds are cross-conditioned. The transaction is subject to customary closing conditions, including the receipt of regulatory approvals and approval by Everi stockholders, and is expected to be completed by the end of the third quarter of 2025. IGT shareholder approval is not required for the transaction.

*Potential Conflicts of Interest*

30.　The breakdown of the benefits of the deal indicates that Everi insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Everi.

31.　Company insiders currently own large illiquid blocks of Company shares, all of which will be converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name of Beneficial Owner | Shares Beneficially Owned | Percentage of Shares Outstanding[1] |
|---|---|---|
| **Beneficial Owners of More than 5%** | | |
| BlackRock, Inc.[2] | 8,398,125 | 9.8 |
| The Vanguard Group[3] | 7,178,509 | 8.4 |
| American Century Investment Management, Inc.[4] | 4,664,685 | 5.4 |
| **Directors and Named Executive Officers[5]** | | |
| Michael D. Rumbolz[6] | 1,919,271 | 2.2 |
| Randy L. Taylor[7] | 1,106,822 | 1.3 |
| David J. Lucchese[8] | 795,880 | * |
| Dean A. Ehrlich[9] | 404,644 | * |

| | | |
|---|---:|---:|
| Darren D. A. Simmons[10] | 365,425 | * |
| Mark F. Labay[11] | 287,426 | * |
| Geoff P. Judge[12] | 246,572 | * |
| Linster W. Fox[13] | 110,000 | * |
| Maureen T. Mullarkey[14] | 10,000 | * |
| Secil Tabli Watson[15] | 1,000 | * |
| Debra L. Nutton[16] | 500 | * |
| Atul Bali[17] | — | * |
| Paul W. Finch, Jr.[18] | — | * |
| **Current directors and executive officers as a group (15 persons)** | **5,463,430** | **6.2** |

32. In addition, Company insiders currently own large blocks of Company options, Company Restricted Stock Units ("RSUs"), and Company PSUs, some of which will be converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Executive Officer | Everi RSUs (#) | Everi PSUs (#) | Double Trigger Value ($) |
|---|---:|---:|---:|
| Michael D. Rumbolz<br>*Executive Chair* | 14,600 | — | 208,050 |
| Randy L. Taylor<br>*President and Chief Executive Officer* | 219,045 | 183,479 | 5,735,967 |
| Mark F. Labay<br>*Executive Vice President, Chief Financial Officer and Treasurer* | 79,399 | 54,145 | 1,903,002 |
| Darren D.A. Simmons<br>*Executive Vice President, FinTech Business Leader* | 64,966 | 40,490 | 1,502,748 |
| David J. Lucchese<br>*Executive Vice President, Sales and Marketing* | 46,150 | 31,894 | 1,112,127 |
| Kate C. Lowenhar-Fisher<br>*Executive Vice President, Chief Legal Officer, General Counsel and Secretary* | 45,783 | 30,906 | 1,092,818 |
| Todd A. Valli<br>*Senior Vice President, Corporate Finance and Tax and Chief Accounting Officer* | 21,166 | — | 301,616 |

33. In addition, employment agreements with certain Everi executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff. The golden parachute compensation is as follows:

| Named Executive Officer | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| Randy L. Taylor | 2,920,000 | 5,735,967 | 23,351 | 8,679,318 |
| Mark F. Labay | 1,112,500 | 1,903,002 | 20,520 | 3,036,022 |
| Darren D.A. Simmons | 947,500 | 1,502,748 | 20,520 | 2,470,768 |
| David J. Lucchese | 900,000 | 1,112,127 | 14,330 | 2,026,457 |
| Dean A. Ehrlich | 125,000 | 579,776 | — | 704,776 |

34. In addition, employment agreements with certain Everi executives entitle such executives to retention bonuses should they continue their employment under certain circumstances. These retention bonuses are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff. The retention bonus compensation is as follows:

| Executive Officer | Aggregate Retention Bonus Opportunity ($)[1] |
|---|---|
| Mark F. Labay<br>*Executive Vice President, Chief Financial Officer, and Treasurer* | 325,000 |
| Darren D.A. Simmons<br>*Executive Vice President, FinTech Business Leader* | 195,000 |
| David J. Lucchese<br>*Executive Vice President, Sales and Marketing* | 165,000 |
| Kate C. Lowenhar-Fisher<br>*Executive Vice President, Chief Legal Officer, General Counsel and Secretary* | 275,000 |
| Todd A. Valli<br>*Senior Vice President, Corporate Finance and Tax and Chief Accounting Officer* | 220,000 |

35. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information illuminates the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36. Thus, while the Proposed Transaction is not in the best interests of Everi, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Proxy Statement*

37. The Everi Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*<u>Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction</u>*

38. The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

   a. Why Company Board deemed Party 1's proposed cash bid of $15.00 to $16.25 per share to be an inferior offer to the $14.50 per share price that was ultimately accepted by the Board; and

   b. Whether the confidentiality agreements entered into by the Company with Apollo differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners; and

   c. The totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

39. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board.

*Omissions and/or Material Misrepresentations Concerning Everi's Financial Projections*

40.     The Proxy Statement fails to provide material information concerning financial projections for Everi provided by Everi management to the Board, and Houlihan Lokey and relied upon by Houlihan Lokey in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

41.     Notably the Proxy Statement reveals that as part of its analyses, Houlihan Lokey reviewed, "certain information relating to the historical, current and future operations, financial condition and prospects of Everi made available to Houlihan Lokey by Everi, including the Financial Projections prepared by the management of Everi relating to Everi and, for supplemental purposes, certain forecasts and estimates of potential cost savings, operating efficiencies, revenue effects, and other synergies expected to have resulted from the Original Proposed Transaction prepared by the management of Everi."

42.     Therefore, the Proxy Statement should have, but fails to provide, certain information in the projections that Everi management provided to the Board, and Houlihan Lokey. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

43.     With regard to the *Certain Financial Projections* provided by Everi Management, the Proxy Statement fails to disclose material line items for the following metrics:

      a.  Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

b. Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same;

c. EBIT, including all underlying inputs, metrics, and assumptions used to calculate same;

d. Net Operating Profit after Taxes, including all underlying inputs, metrics, and assumptions used to calculate same;

e. Depreciation & Amortization, including all underlying inputs, metrics, and assumptions used to calculate same;

f. Accretion of Contract Rights, including all underlying inputs, metrics, and assumptions used to calculate same;

g. Capital Expenditures, including all underlying inputs, metrics, and assumptions used to calculate same;

h. Change in Net Working Capital, including all underlying inputs, metrics, and assumptions used to calculate same;

i. Unlevered Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate same; and

j. Adjusted EBITDA less Capital Expenditures, including all underlying inputs, metrics, and assumptions used to calculate same.

44. The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

45. This information is necessary to provide Plaintiff in his capacity as a Company stockholder with a complete and accurate picture of the sales process and its fairness. Without this

information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

46. Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Houlihan Lokey's financial analysis, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Houlihan Lokey*

47. In the Proxy Statement, Houlihan Lokey describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinion.

48. With respect to the *Selected Companies Analysis*, the Proxy Statement fails to disclose:

> a. The inputs, metrics, and assumptions used to determine the selected multiples range of 5.0x to 6.0x applied to the Company's Adjusted EBITDA for the twelve-month period ended June 30, 2024;
>
> b. The inputs, metrics, and assumptions used to determine the selected multiples range of 4.5x to 5.5x applied to the Company's Adjusted EBITDA for the calendar year ending December 31, 2024; and

  c. The inputs, metrics, and assumptions used to determine the selected multiples range of 8.5x to 9.5x applied to the Company's Adjusted EBITDA less capital expenditures for the calendar year ending December 31, 2024.

49. With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:

  a. The inputs, metrics, and assumptions used to determine the perpetuity growth rates range of 2.50% to 3.50% utilized;

  b. The inputs, metrics, and assumptions used to determine the discount rates ranging from 11.0% to 12.0% utilized; and

  c. The Company's weighted average cost of capital utilized.

50. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

51. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Everi stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## <u>(Against All Defendants)</u>

52. Plaintiff repeats all previous allegations as if set forth in full herein.

53. Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

54. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

55. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

56. The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

57. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

58. The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

59. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

60. Plaintiff repeats all previous allegations as if set forth in full herein.

61. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants

knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

62. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement; and nevertheless, approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

63. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Everi's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

64. The Individual Defendants acted as controlling persons of Everi within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Everi to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Everi and all of its employees. As

alleged above, Everi is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.   Enjoining the Proposed Transaction;

B.   In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.   Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.   Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 25, 2024　　　　　**BRODSKY & SMITH**

By: *Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*